IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

HENDERSON DuVAL HOUGHTON, #55194-004                    PLAINTIFF

VS.                                        CIVIL ACTION NO.  5:04cv271-DCB-JCS

UNITED STATES OF AMERICA                                 DEFENDANT


MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss, or in the alternative, Motion for

Summary Judgment (docket entry numbers 25, 26, and 27) filed by the Defendant, to which the

Plaintiff responded, and the Defendant replied.  In addition, the Plaintiff has filed a Cross-Motion

for Partial Summary Judgment (docket entry number 44), and a Motion for Default judgment

(docket entry number 51). For the reasons explained below, the Court finds that the Defendant's

Motion to Dismiss (docket entry numbers 25, 26, and 27) should be granted to the extent

discussed in this Memorandum Opinion and Order.  The Plaintiff's Cross-Motion for Partial

Summary Judgment (docket entry number 44) and Motion for Default Judgment (docket number

51) are hereby denied without prejudice.

A.  Plaintiff's Claims

Plaintiff, a federal prisoner formerly housed at FCI-Yazoo City, filed[1] this action pursuant

---

[1]Plaintiff signed his complaint on October 6, 2004, and it was filed with the District Court
on October 8, 2004.  "For pleadings submitted by prisoners acting pro se, the Fifth Circuit has
recognized that a 'mailbox rule' applies and that the date when prison officials receive the
pleading from the plaintiff for delivery to the court is considered the time of filing for limitations
purposes.  Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  It may reasonably be inferred
that a prisoner delivered his petition to the prison officials for mailing on the date he signed it.
See United States v. O'Kaine, 971 F.Supp. 1479, 1480 (S.D. Ga. 1997)."  Punch v. State of

to the Federal Tort Claims Act, 28 U.S.C. §§1346, 2671 *et seq.*  Houghton is set for release on

January, 19, 2007.  <u>See</u> Defendant's Exhibit 1.  Plaintiff alleges that this is an action for

monetary damages for injury caused by Defendant's officers and employees acting within the

scope of their office and employment.  Houghton sets forth five claims in his complaint based on

events which occurred during the period of time from March 26, 2001, to June 3, 2004.  In his

first claim, he alleges a claim for negligence and resulting injuries based on involuntary exposure

to Environment Tobacco Smoke ("ETS").   In his second claim, he alleges a claim for negligence

and injuries resulting from overcrowding of prisoners and airborne black mold spores.  In his

third claim, labeled "negligence per se," Houghton alleges that staff at FCI-Yazoo City did not

take appropriate steps to protect him from ETS and provide a healthy living environment, all in

contravention to the provisions of the inmate handbook and BOP program statements.  In his

fourth claim, Houghton alleges that the Defendant's officers and employees negligently failed to

perform their ministerial duties to protect the Plaintiff from the hazards of ETS and preserve his

health and safety by failing to follow BOP policy as set forth in the program statements and

inmate handbook.  Within claim number four, he also appears to set forth a claim for a loss of

$269.50 of personal property and make allegations regarding interference with legal mail.  He

further alleges retaliation by the staff in the form of a lockdown for a large number of prisoners

who had refused to enter the mess hall for their noon meal on an unspecified date.  He also

alleges that the because of the negligence of the employees of Defendant and the risks to his

health posed by the environment at the facility, he could not risk the one hundred-fifty dollar

---

<u>Louisiana</u>, 1999 WL 562729, *2 n.3 (E.D. La. July 29, 1999)(unpublished).  Accordingly, this
Court will infer that Houghton delivered his petition to prison officials for mailing on October 6,
2004.

filing fee, as well as sixty days earned good conduct time, to file this action.  Finally, in his fifth

claim, the Plaintiff alleges intentional infliction of mental distress.  He alleges that the officers

intentionally exposed him to ETS while knowing that he had a fear of it based upon the death of

his grandfather from ETS.[2]   In his prayer for relief, he requests the court waive any statute of

limitations applicable to the case because he could not afford the filing fee, and he feared a loss

of earned good conduct time for bringing a suit.  He also asks for compensatory relief in the

amount of $12 million for the four counts of allege negligence, $1.5 million for his fifth count of

negligence, $269.50 for his property loss, and $87,000 for the unauthorized opening of his legal

mail.

B.  Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

In response to the complaint, the Defendant filed a Motion to Dismiss, or in the

alternative, Motion for Summary Judgment.  See docket entry numbers 25, 26, 27, and 28.[3]  In

this Motion, filed pursuant to Federal Rule of Procedure 12(b)(1), the Defendant argues that this

court is without jurisdiction to consider the Plaintiff's complaint.  The Defendant asserts that the

_____

[2]In his response to the Motion to Dismiss, or in the alternative, Motion for Summary Judgment, the Plaintiff withdrew his allegations regarding legal mail and retaliation, "subject to his further exhaustion."  Plaintiff's Consolidated Declaration and Argument in Opposition to Defendant's Motion to Dismiss this Complaint at 1.  The Court interprets this withdrawal to include withdrawal of a claim for retaliation in his first claim, in which Plaintiff alleges that his bed was burned in retaliation for his complaints regarding the smoke in his unit.  Complaint at 7.  The Court also interprets this withdrawal to include any alleged retaliation associated with a lockdown in the prison lasting ten days, as alleged in paragraph 9 of Claim Four.  Complaint at 20.

[3]In a docket annotation dated April 20, 2005, the Clerk of Court directed the attorney for the government to re-file the Motion to Dismiss, or in the alternative, Motion for Summary Judgment and its supporting Memorandum (docket entry numbers 25 and 26). The attorney complied, re-filing the items at docket entry numbers 27 and 28.  The motions at docket entry numbers 27 and 28 are duplicative of the motions located at docket entry numbers 25 and 26, and docket entry numbers 25 and 26 remain pending.

Plaintiff's claims should be dismissed because either the claims are time-barred, the Plaintiff has abandoned the claims, or the Plaintiff has failed to exhaust administrative remedies as to one claim.  With regard to Plaintiff's claims as found in claims one, two, three, and five, regarding ETS and black mold spores, the Defendant asserts that the claims are time-barred.   The Defendant also asserts that the Plaintiff's claim for loss of personal property, as set forth in claim four, is time-barred. Finally, the Defendant argues that the Plaintiff has failed to file an administrative claim and, thus, has failed to exhaust his administrative remedies, with regard to his claim number four concerning access to courts and the Defendant's 'ministerial duty." Complaint at page 18, Para. 6.

In response to the Motion to Dismiss, the Plaintiff has withdrawn his allegations regarding legal mail and retaliation, as found in his first claim and his fourth claim.  Furthermore, in his Response to Court order at docket entry number 7, he admits that he failed to exhaust administrative remedies with regard to any legal mail claim.  In this same Response he further admits that he has not alleged a claim for retaliation concerning inadequate food service during a lock down.  See Response, docket entry number 7, at p. 6.  He also admits that his claim for loss of personal property, as set forth in claim four, is time-barred, but he submits that requiring him to pay the filing fee put a "chill" on his access to courts.  See Plaintiff's Opposition to Defendant's Motion to Dismiss, docket entry number 38, at p. 6.  As set forth in more detail to follow, Houghton argues, however, that his remaining claims are not time-barred and, thus, should be considered by this Court.

C.  Discussion

A complaint must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction

4

if "the court lacks the statutory or constitutional power to adjudicate the case." John Corp. v. City of Houston, 214 F.3d 573, 576 (5th Cir. 2000). In ruling on a Rule 12(b)(1) motion, the Court may evaluate either the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. Den Norske Stats Olijeselskap AS v. Heeremac VOF, 241 F.3d 420, 424 (5th Cir. 2001). The plaintiff has the burden of establishing subject matter jurisdiction. John Corp., 214 F.3d at 576.

### 1. Exhaustion of Certain Claims

The Plaintiff has failed to exhaust administrative remedies with regard to certain claims, therefore they must be dismissed without prejudice. Within his fourth claim, Houghton has failed to exhaust his claim regarding the defendants' ministerial duties to protect the Plaintiff from the hazards of ETS and preserve his health and safety by failing to follow BOP policy as set forth in the program statements and inmate handbook. He has failed to exhaust his administrative remedies regarding alleged interference with legal mail. There is no evidence that he has exhausted administrative remedies regarding events related to a lockdown on an unspecified date. Finally, he has not exhausted administrative remedies with regard to his fifth claim for intentional infliction of emotional distress[4]. The United States Supreme Court has held that the PLRA's exhaustion requirement is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. See Porter v. Nussle, 122 S.Ct. 983 (2002); see also Booth

---

[4]As an alternative basis for dismissal of the Plaintiff's fifth claim, he may not recover for emotional or mental damages related to this claim without a specific physical injury. 42 U.S.C. § 1997e(e); Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001).

v. Churner, 532 U.S. 731, 739 (2001).

> Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.  See Booth v. Churner, 532 U.S. 731, 739, 121 S.Ct. 1819, 1490 L.Ed.2d 958 (2001).  All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all "action[s] . . . brought with respect to prison conditions," whether under § 1983 or "any other Federal law."

Porter v. Nussle, 122 S.Ct. 983, 988 (2002)(some citations omitted). The Fifth Circuit "has taken

a strict approach to the exhaustion requirement" of § 1997e.  Days v. Johnson, 322 F.3d 863 (5th

Cir. 2003).  Thus, the above-discussed claims should be dismissed without prejudice.

2. Withdrawal of Certain Claims

The Plaintiff has also withdrawn or abandoned certain claims.  In response to the Motion

to Dismiss, the Plaintiff has withdrawn his allegations regarding legal mail and retaliation.  He

also admits that his claim for personal property is time-barred, but argues that the filing fee

requirement and federal provisions regarding risk of good conduct time placed a  "chill" on his

access to courts. The filing fee requirement of the Prison Litigation Reform Act is constitutional

and has been upheld by the courts.  "[T]here is no absolute 'right' to proceed in a civil action

without paying a filing fee; this is a procedural privilege that Congress may extend or withdraw."

Strickland v. Rankin County Correctional Facility, 105 F.3d 972, 975 (5th Cir. 1997).  The Fifth

Circuit has also held that the fee provisions of the Prison Litigation Reform Act do not

unconstitutionally deny access to the courts for prisoners, and these provisions "do not hinder

prisoners' abilities to prepare or transmit their cases or appeals to court."  Norton v. Dimazana,

122 F.3d 286, 290 (5th Cir. 1997).  Furthermore, the provision of the Prison Litigation Reform

Act regarding the revocation of good conduct time that has not yet vested, 28 U.S.C. § 1932, has

been cited with approval by the United State Supreme Court, and thus, still stands.  See

Crawford-El v. Britton, 523 U.S. 574, 596 (1998)(citing provisions of the PLRA "that should

discourage prisoners from filing claims that are unlikely to succeed."); see also Bulger v. United

States, 65 F.3d 48 (5th Cir. 1995)(finding that a federal prisoner's loss of the ability automatically

to accrue good time credits does not implicate a constitutionally protected liberty interest).

Accordingly, this allegation is without merit, and the loss of personal property claim should be

dismissed as time-barred.

### 3. Remaining Claims

Considering that the Plaintiff has abandoned or withdrawn certain claims, there remain

three FTCA claims forming the basis of this suit, as follows: Claim number TRT-SER-2002-

11076, dated 9/5/02 ("the 9/5/02 claim"); Claim number TRT-SER-2004-01641, dated 1 /26/04

("the 1 /26/04 claim"); and Claim number TRT-SER-2004-04333, dated 7/23/04 ("the 7/24/04

claim").  See Exhibits 2, 9, and 11, respectively, to Defendant's Motion to Dismiss.  In the 9/5/02

claim, the Plaintiff alleged that the date and day of accident was a period of injury from "26

March 2001 to present."  Exhibit 2 to Defendant's Motion to Dismiss.  The 9/5/02 claim was

denied by letter dated October 23, 2002.  In the October 23, 2002, letter of denial from the

Bureau of Prisons ("BOP") Regional Counsel, the Plaintiff was advised that if he was

"dissatisfied with the [agency's] determination in this matter, [he is] afforded six (6) months

from the date of the mailing of this communication within which to bring suit in the appropriate

United States District Court."  Exhibit 3 to Defendant's Motion to Dismiss; also attached to

Plaintiff's Complaint.  In a letter to the Regional Counsel dated August 21, 2003, Plaintiff

requested reconsideration of the 9/5/02 claim.  Exhibit 5 to Defendant's Motion to Dismiss.  On August 28, 2003, the BOP Regional Counsel responded, noting that by April 23, 2003, six months from the denial of his claim, he should have filed suit in the appropriate United States District Court, or he should have filed a request for reconsideration with that office.  Exhibit 6 to Defendant's Motion to Dismiss (citing 28 U.S.C. 2401(b), *et seq.*, and 28 C.F.R. 14.9(b)); also attached to Plaintiff's Complaint.  In a letter dated September 26, 2003, the Plaintiff continued to dispute the denial of his claim and amended his claim for monetary damages.  Exhibit 7 to Defendant's Motion to Dismiss.   In response to the letter of September 26, 2003, the BOP Regional Counsel acknowledged receipt of the letter, but reiterated that the Plaintiff's attempt to obtain reconsideration of his claim, as well as amend his claim, was time-barred.  Exhibit 8 (dated 10/20/03) to Defendant's Motion to Dismiss; also attached to Plaintiff's Complaint.

Plaintiff made another claim alleging injuries from ETS and black mold spores at FCI-Yazoo City on January 26, 2004, Claim number TRT-SER-2004-01641, which the Court refers to as "the 1 /26/04 claim."  In this claim, the Plaintiff alleged harm dating from March 26, 2001 to present, presumably January 26, 2004, the date of the claim.  By letter dated February 2, 2004, the BOP Regional Counsel rejected the claim as being repetitive of the 9/5/02 claim because it alleged injuries for the same time period as the 9/5/02 claim. See Exhibit 10 to Defendant's Motion to Dismiss; also attached to Plaintiff's Complaint.

On July 23, 2004, Plaintiff filed another claim for injuries due to ETS at FCI-Yazoo City, Claim number TRT-SER-2004-04333, which the Court refers to as "the 7/23/04 claim."  In this claim, the Plaintiff once again alleged harm dating from March 26, 2001, but ended the time period for injury on June 3, 2004. See Exhibit 11 to Defendant's Motion to Dismiss.   The

Plaintiff appears not to allege a claim for injury from black mold spores in the 7/23/04 claim.  In a response dated July 29, 2004, the BOP Regional Counsel rejected the claim as repetitive, recounting that in two previous claims the Plaintiff  had alleged the same claims or allegations for the time period "26 March 2001 to the present."  See Exhibit 12 to Defendant's Motion to Dismiss; also attached to Plaintiff's Complaint.

In the Plaintiff's Response to the Motion to Dismiss, he states that the Defendant wrongly rejected the 1/ 26/04 claim, arguing that although he alleged an injury for 26 March 2001 to present, "that term represented injury in the Second Claim that had not accrued prior to filing the First [the 9/5/02 claim]."  Docket entry number 38, Plaintiff's Response at 3.   Thus, it appears that he is alleging that his 1/ 26/04 claim is for injury accrued in the 477 days between September 5, 2002, and January 26, 2004.   The Plaintiff also makes a similar argument with regard to this third claim, the 7/23/04 claim.  He asserts that the 7/23/04 claim was not a "repeat or correction of either the First or Second Tort claims."  Id. at 4.  Instead, the 7/23/04 claim is for "injury accrued during a period of 159 days that had not accrued prior to the filing of the Second [the 1/ 26/04 claim], making it a New Tort Claim that the Defendant Wrongly Rejected."  Id. at 4.  He further alleges that he claimed new injuries in the 7/23/04 claim because between the filing of the 1 /26/04 claim and the 7/23/04 claim, he alleges that he was diagnosed with pulmonary fibrosis, high blood pressure and high cholesterol levels, which he attributes to prolonged exposure to ETS and airborne black mold spores.  Id. at 4 to 5.

The Defendant has replied, arguing that the Plaintiff is now attempting to change the time period for his claims, whereas when he resubmitted his allegations the second and third times as tort claims, he consistently identified the time period of his injury from the alleged tort as

beginning March 26, 2001.  The Defendant argues that the Plaintiff is now attempting to avoid

the plain meaning of the dates he chose to put on the forms when he submitted them.  Docket

Entry number 43, Defendant's Reply at 2.  The Defendant argues that the Plaintiff, at the time,

was quite simply attempting to resurrect his claim for a time period which had already been

addressed, and for which his six-month opportunity to file suit had expired.

The FTCA mandates that

> [a]tort claim against the United States shall be forever barred unless it is presented
> in writing to the appropriate Federal agency within two years after such claim
> accrues or unless action is begun within six months after the date of mailing ... of
> notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b)(1994).  The Fifth Circuit has found that "[a]lthough phrased in the

disjunctive, 'this statute requires a claimant to file an administrative claim within two years [of

accrual] *and* file suit within six months of its denial.'" Ramming v. United States, 281 F.3d 158

(5th Cir. 2001)(quoting Houston v. United States Postal Serv., 823 F.2d 896, 902 (5th Cir.

1987))(emphasis in original).

The FTCA is a limited waiver of sovereign immunity for tort claims against the United

States.  When discussing the limitations period at issue in FTCA cases, the Fifth Circuit has held,

as follows:

> Limitations periods in statutes waiving sovereign immunity are jurisdictional, and
> a court exercising its equitable authority may not expand its jurisdiction beyond
> the limits established by Congress.  The FTCA also acts to waive the immunity of
> the United States; and this Court, in construing the statute of limitations which is
> a condition of that waiver, "should not take it upon [itself] to extend the waiver
> beyond that which Congress intended."

Ramming, 281 F.3d at 165 (citations omitted)(quoting United States v. Kubrick, 444 U.S. 111,

118 (1979)).

As stated above in 28 U.S.C. § 2401(b), and as clarified by the Fifth Circuit, the limitations period for filing an action in the district court after the denial of an FTCA claim is six months from the denial of the claim by the agency to which the claim was presented.  In this case, Plaintiff's 9/5/02 claim was denied by the Bureau of Prisons by letter dated October 23, 2002.  Therefore, any action in district court based on the 9/5/02 claim should have been filed by April 23, 2003.  Plaintiff did not file this action until October 6, 2004.  Accordingly, the action with regard to the 9/5/02 claim was untimely filed, and, district court is without jurisdiction to consider Plaintiff's legal claims based upon the 9/5/02 FTCA claim.

Moreover, this is not a case in which would warrant equitable tolling.  Equitable tolling is available "in limited circumstances to prevent a plaintiff from unjustly losing a claim vigorously pursued."  Perez v. United States, 167 F.3d 913, 919 (5th Cir. 1999).  A plaintiff who does not act diligently in pursuing his or her claim cannot rely on theories of equity to save that claim. Wilson v. Sec'y of Dept. of Veterans Affairs, 65 F.3d 402, 404-405 (5th Cir. 1995).  Plaintiff only became diligent about pursuing his claim once it appeared that he had missed the April 25, 2003, filing deadline for his first tort claim, the 9/5/02 claim.  Plaintiff's allegations regarding the inability to pay the filing fee and possible loss of good conduct time do not act to extend the limitations period.  As stated *supra* at 6, the Fifth Circuit has upheld the fee provisions of the Prison Litigation Reform Act.  See Norton v. Dimazana, 122 F.3d 286 (5th Cir. 1997). Furthermore, the Supreme Court has not overturned 28 U.S.C. § 1932's penalty of possible revocation of good conduct time that has not yet vested for filing malicious or harassing claims, or for presenting false testimony or false evidence. Crawford-El v. Britton, 523 U.S. 574 (1998). Likewise, his allegation that lack of counsel prevented him from filing suit is without merit, as

11

Plaintiff has demonstrated that he is able to prosecute his claims by filing this action. See United States v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002)(citing cases; noting that a prisoner's *pro se* status and inadequate prison library did not warrant equitable tolling); see also Galindo v. United States, 153 Fed.Appx. 333 (5th Cir. 2005)(FTCA statute of limitations not tolled for federal prisoner who lost contact with attorney, but who could have filed *pro se* complaint). Accordingly, the statute of limitations is not tolled for claims based upon the 9/5/02 claim, and claims in this action based upon the 9/5/02 claim are dismissed without prejudice, as this Court is without jurisdiction to consider them.

Likewise, the Plaintiff's claims in this action based upon the 1/26/04 FTCA claim are untimely, and should be dismissed. By letter dated February 2, 2004, the Plaintiff's 1/26/04 FTCA claim was denied as repetitive of his earlier FTCA claim. Therefore, according to statute, the Plaintiff had until August 2, 2004, to file an action in district court based upon the 1/26/04 claim. Instead, the Plaintiff filed this action on October 6, 2004, over two months beyond the deadline. As stated above, the Plaintiff has not demonstrated that this case warrants equitable tolling of the statute of limitations, therefore, the Plaintiff's claims in this action based upon the 1/26/04 FTCA claim are dismissed as untimely, as the Court is without jurisdiction to consider them.

Finally, the Court turns to consider the Plaintiff's claims in this action based upon the FTCA 7/23/04 claim.[5] In his response to the Motion to Dismiss, Plaintiff now seeks to amend his claims as set forth in the 7/23/04 claim to reflect a different period of injury and make claims

---

[5]The 7/23/04 claim was denied by letter dated July, 29, 2004. Exhibit 12 to Defendant's Motion to Dismiss; attachment to Plaintiff's complaint.

for additional injuries not set forth in his claim form.  He desires to recast the time period

covered by the 7/23/04 claim, alleging that instead of a date of injury of March 26, 2001 to June

3, 2004,[6] he intended to allege his injury accrued after his 1/ 26/04 claim and before filing his

7/23/04 claim. During this time period, he alleges in his 7/23/04 claim and in his Response

(docket number 38), that he not only sustained harm from ETS, but he alleges also that he was

diagnosed with Pulmonary Fibrosis.  Within the text of his Response (docket number 38), he

further alleges that he was injured by black mold spores and acquired high blood pressure and

high cholesterol levels. The Defendant counters that by adding new alleged injuries and re-

crafting the time period at issue, the Plaintiff is simply attempting to avoid the six-month filing

deadline, which he missed in his first two claims, despite being advised by the agency in

response to his second tort claim of 1/ 26/04 that it considered his claims as repetitive for seeking

damages dating back to the same beginning date for injury, March 26, 2001.

    The federal regulation regarding amendment of a tort claim, 28 C.F.R. 14.2 ( c), requires

that amendments be received prior to the agency's final disposition of the claim.  During the

course of the administrative appeal process on his various claims, the Plaintiff was made aware

of the failings in his tort claims by the denial of his 1/ 26/04 claim. See Exhibits 10 and 12 to

Defendant's Motion to Dismiss; attachments to Plaintiff's Complaint. Despite this notice, the

Plaintiff, however, continued to pursue the claims for injuries related to ETS in his 7/23/04 claim

---

[6]Plaintiff also states in his 7/23/04 claim "Basis of Claim" section that "[t]his Claim is for
the 1,164 days of involuntary exposure to that known Class "A" carcinogen."  Exhibit 11,
Defendant's Motion to Dismiss; attachment to Plaintiff's Complaint.  The Court notes that it has
calculated the time period stated, March 26, 2001, to June 3, 2004, and reaches a total of 1,166
days.  In any event, it appears that the Plaintiff is making clear that he is pursuing a claim for the
entire time period from March 26, 2001 to June 3, 2004.

without amending his claim form to include claims for a later time period.  The power to amend

his administrative pleading is beyond the jurisdiction of this Court.  Furthermore, "a litigant

cannot base any part of a tort action against the United States on claims not presented to the

appropriate administrative agency." Izen v. Catalina, 251 F.Supp.2d 1327, 1345 (S.D. Tex.

2002).  Thus, to the extent that the Plaintiff has attempted to add claims in this forum to his

7/23/04 FTCA claim which were not presented to the Bureau of Prisons, those claims cannot

stand.  Therefore, he cannot maintain claims for injuries related to black mold spores, high blood

pressure, and high cholesterol levels in this forum, as they were not presented in the 7/23/04

FTCA claim.

Moreover, by deliberately filing a claim for a time period which had already been

rejected, the Court finds that the Plaintiff failed to exhaust his administrative remedies because

he did not give the Bureau of Prisons an opportunity to address the substance of his allegations.

"To exhaust administrative remedies, a person must follow the rules governing filing and

prosecution of a claim." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002), *cert. denied*,

537 U.S. 949 (2002); Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999); but see Thomas v.

Woolum, 337 F.3d 720 (6th Cir. 2003). Pozo was decided in the context of state prisoner

administrative remedies, and its reasoning applies in this case.  Allowing the Plaintiff to bypass

his existing administrative remedies "would leave § 1997e(a) without any oomph." Pozo, 286

F.3d at 1025.  Moreover, the Fifth Circuit "has taken a strict approach to the exhaustion

requirement" of § 1997e.  Days v. Johnson, 322 F.3d 863 (5th Cir. 2003).[7]  Before the Plaintiff

_____

[7]There is also authority to suggest that even though Plaintiff pursued a claim under the
FTCA, he did not exhaust pursuant to § 1997e because he does not allege that he pursued his
grievances through the administrative remedy program.  See Steele v. Bureau of Prisons, 100

filed his third claim of 7/23/04, he was well aware, based on the rejection of his 1/26/04 claim, that his claim could be rejected as being repetitive of his 9/5/02 claim.  Additionally, it appears that the Plaintiff is attempting to make an end-run around the statute of limitations as it relates to the 9/5/02 claim. As stated in Willis v. United States, 719 F.2d 608, 613 (2nd Cir. 1983), "[i]f Congress mandated that suit be brought within six months after administrative denial of a claim, as we hold that it did, the bar cannot be avoided by starting all over again."  Therefore, it appears that Plaintiff has failed to exhaust his administrative remedies as to the 7/23/04 claim, and this Court is without jurisdiction to consider claims in this action based upon the 7/23/04 FTCA claim.

Nevertheless, assuming, without deciding, that the Plaintiff's claims in this action, based upon his 7/23/04 FTCA claim are exhausted and timely filed, the Court finds that these claims could be foreclosed by this Court's opinion in Reydel Santos v. United States Bureau of Prisons, Civil Action Number 5:03cv507-DCB-JCS (filed March 7, 2005).  See Opinion as attached.  In Santos, this Court found that the federal prisoner plaintiff's FTCA claims for injuries related to

---

Fed.Appx. 773, 776 (10th Cir. 2004).  In Steele, the Tenth Circuit upheld the dismissal of the prisoner plaintiff's claims, stating, as follows:

> [F]iling an FTCA claim would not exempt [the federal prisoner plaintiff] from the PLRA exhaustion requirement even absent the provision requiring joint monetary and non-monetary claims to be pursued through the Administrative Remedy Program. The Supreme Court has held that Congress did not intend to allow inmates to avoid exhaustion merely by tailoring their requests for relief to preclude the availability of certain administrative remedies.  The language of the PLRA's exhaustion requirement applies to all available procedural remedies, not merely particular species of redress.  Whether [the federal prisoner plaintiff] filed a claim for monetary, non-monetary, or both forms of relief, the Administrative Remedy Program is still considered available and must be exhausted in compliance with the PLRA.

Steele, 100 Fed.Appx. at 776 (citations omitted).

ETS at FCI-Yazoo City in 2002 were precluded by the "discretionary function exception" to the FTCA's waiver of sovereign immunity. In addition, this Court found that Santos's claim for intentional infliction of emotional distress, based upon a fear of future illness as a result of exposure to ETS, would not be actionable under Mississippi law.  Accordingly, the Court gives the Plaintiff until May 1, 2006, to show cause why his remaining claims in this action, based upon the 7/23/04 FTCA claim, are not precluded by Santos.

### D.  Conclusion

Accordingly, for the foregoing reasons, the Court finds that it is without jurisdiction to consider Plaintiff's claims based upon the 9/5/02 and 1/26/04 FTCA claims.  Therefore, the Defendant's Motions to Dismiss are hereby granted to the extent that Plaintiff's claims in this action are based upon the 9/5/02 and 1/26/04 FTCA claims.  Furthermore, the Plaintiff's Motions (44 and 51) are denied without prejudice. The Court hereby orders the Plaintiff to show cause by May 1, 2006, why his claims in this action based upon the 7/23/04 FTCA claim are not precluded by Santos.

SO ORDERED, this the   31st   day of    March      , 2006.

_____s/ David Bramlette_____
UNITED STATES DISTRICT JUDGE

16